C. C. WHITE v. M. M. TEMPLETON & CO.

No. 6759.

1. **Agency to Sell Land.**—See facts held insufficient to establish agency to sell land, or to show that the sale, commissions therefor sued for, was made or brought about by the land agents suing for compensation.

2. **Same.**—The mere fact that the owner of the lands gave the land agent a list of the lands, with the net price per acre of the same, would not constitute an agency by the owner authorizing the land agent to sell, etc.

APPEAL from Wichita.   Tried below before. Hon. P. M. Stine.
The opinion gives a statement.

*Stevens & Herbert,* for appellant.—The furnishing by White of a written memorandum of the prices at which White held the lands to M. M. Templeton & Co., at their special instance and request, did not of itself constitute M. M. Templeton & Co. White's employed agents to sell such lands; and White's reply to the inquiry of Templeton & Co. as to what he would take for certain of his lands to be sold to a Dallas County man, giving prices, etc., did not constitute Templeton & Co. his general agents for the sale of his lands; and if agency at all was created Templeton & Co. were simply appointed the special agents to sell the particular lands to the Dallas County man.   Story Agency, 7 ed., secs. 17, 45–56, 87, 126, 127; McAlpin v. Cassidy, 17 Tex., 463; 17 Texas, 326, 327.

*Sparks & Smith* and *Miller & Carrigan,* for appellees. — 1. A party furnishing a land agent with the list and net price of his lands for the purpose of disposing of the same, the trust being accepted, thereby creates an agency, and if the agent effects a sale thereunder he is entitled to the excess, if any, of the net price.   Veazie v. Williams, 8 How., 134; Story v. Agency, secs. 47, 324; Am. and Eng. Encyc. Law, p. 396, sec. 10, note 1; Wilson v. Dame, 58 N. H., 392; Hinds v. Henry, 36 N. J. Law, 328; Earp v. Cummings, 54 Pa. St., 394.

2. If the agent of the owner of land is the moving cause of the sale of land placed in his hands for disposal, he is entitled to compensation for his services according to his contract.   McGavock v. Woodleaf, 20 How. 221; James v. Adler, 34 Md., 440; Moses v. Bireling, 31 N. Y., 462; Woods v. Stephens, 64 Mo., 555; Higgins v. Moore, 34 N. Y., 417; Philand v. Garner, 43 Cal., 306; Stewart v. Matthews, 32 Wis., 344; Bernard v. Monett, 3 Keys, 203; Earp v. Cummings, 54 Pa. St., 394.

HOBBY, PRESIDING JUDGE.—The principal question in the case, we think, raised by the assignments of error is as to the sufficiency of the evidence to support the judgment.

Templeton & Co., who were land agents in Wichita Falls, Texas, sued

the appellant, White, to recover the sum of $4000, which they claimed to be due them under a contract made with White, by the terms of which they were to negotiate the sale of 6122 acres of land belonging to him, and receive as compensation therefor all in excess of $3 per acre realized from said sale.    They alleged the sale as White's agents of 5922 acres at $3.50 per acre and 200 acres at $8 per acre.

A second count in the petition claimed as the reasonable value of their services in making said sale the sum of $2300, which amount they prayed judgment for in the alternative.

The answer consisted of general and special exceptions to the petition, a general denial and special denial of the employment of appellees, and a further plea in substance that if appellees were instrumental in making any sale of said lands it was voluntary on their part and without authority, and that if any compensation was due them it was from the purchaser, Kemp.    And further, that the sale was consummated by the appellant himself.

The cause was tried by the court without a jury and a judgment was rendered in favor of M. M. Templeten & Co. for the sum of $800.    White appeals.

The proof was that appellant, White, owned the land mentioned, and that appellees were engaged in business as land agents in Wichita Falls.

C. J. Green, one of the appellees and a partner of Templeton, testified that White had never employed him to sell the land, but he supposed they were his agents for that purpose, because a list of said lands, with price, etc., attached, was on their books.

In May, 1887, Templeton applied to White for this list, which the latter gave him.

Templeton testified that "White never at any time promised to pay him any commission to sell his land, but said the prices given were net to him (White).    The price at which he held the land was $3 per acre for that portion north of the railroad or $3.65 per acre for all of his land in Clay and Wichita counties."    In October, 1887, Templeton wrote White with reference to the sale of the land to a man living in Dallas County.    He (White) replied that he would sell to this man all of his land east of No. 13 at $3 per acre net to him, or all of his lands for $3.65 per acre.

On October 20, 1887, Green wrote White that they had not heard from the Dallas County man, but that J. A. Kemp had on that day offered $3.50 per acre for the entire body of land east of the railroad, to be paid for in a stock of merchandise then owned by Kemp "as far as the stock would go" and the balance to be paid in cash, and that Kemp was to pay the commissions of appellees in event of a sale.    This proposition White declined.

It was in evidence that some time prior to this White and Kemp had discussed the purchase of this land.

Kemp bought the land from White on November 19, 1887, paying for 5922 acres $3.50 per acre, and $8 per acre for 200 acres. The payments made by Kemp were $15,419 in merchandise and $8,908 he executed his note for.

Kemp testified that about a month before he purchased the land appellee Green told him he was about to effect a sale of the land to a Dallas County man. Kemp expressed his desire to buy and told him he would pay him, Green, $1000 to make the purchase from White.

The appellee Templeton testified that he told appellant White a short time before this suit was brought that "he had nothing to do with it," that " Green was the party who intended to sue;" and further that if any one owed appellees " a commission for selling White's land it was Kemp."

J. A. Coffield testified that before February 17, 1886, he was a partner of appellee Templeton in the land agency business; that he then discussed with White and Kemp the sale of the land in question.

No reasonable construction of the foregoing facts, in our opinion, justifies the inference that the appellees were constituted the agents of appellant to sell the latter's land, nor is there anything disclosed by the proof which would authorize the conclusion that they were instrumental in consummating the actual sale of the land by White to Kemp on November 19, 1887.

The mere fact alone that White, in May, 1887, at the request of Templeton, gave him a list of the land owned by him, with the net price per acre of the same, would not create such agency. And this fact appears to have been relied on as sufficient authority, because it plainly appears from the testimony of both Templeton and Green that White at no time agreed to pay them any commission for selling his land, and at no time expressly authorized them to act as his agents for that purpose.

It is also apparent from the evidence that for some time prior to the application made by Templeton to White for the list of the lands, with price per acre, Kemp, the purchaser, and White had the question of the sale of the land under discussion. The price then asked by White it seems was finally paid by Kemp in November, 1887. This sale of the land we do not think from the evidence in the case can be said to be fairly ascribed to any agency of appellees.

Because the evidence does not support the findings of the court, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*